## JUDGE FURMAN

Steve Cooper
Jennifer L. Achilles
REED SMITH LLP
599 Lexington Avenue, 22 Fl.
New York, New York 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
Attorneys for Plaintiff

# 12 CV 3741

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

LI HONG,

           Plaintiff,

    - against -

PERFECT WORLD CO., LTD., and MICHAEL
YUFENG CHI,

         Defendants.

-------------------------------------------------------X

Case No._____

**COMPLAINT**

    Plaintiff Li Hong ("Plaintiff"), by his undersigned attorneys, alleges the following upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based upon, among other things, the investigation conducted by him and his attorneys, which includes a review and analysis of Perfect World Co., Ltd.'s ("Perfect World") press releases, conference calls, analyst reports, media reports, news articles, and filings with the United States Securities and Exchange Commission ("SEC"). Plaintiff's information and belief is also based upon his review of documents relating to an investigation of the Defendants by the Beijing Public Securities Bureau. Many of the facts supporting the allegations contained in this Complaint are known only to Defendants, or are exclusively within their custody and control. Plaintiff believes that further substantial evidentiary support will exist for the allegations in this Complaint after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.     Plaintiff seeks compensation from Defendants for their violations of the Securities Exchange Act of 1934 (the "Exchange Act").  As described below, Defendants have been engaged in a pattern of fraudulent activities designed to siphon off money, assets and opportunities from Perfect World and/or its affilates, in order to enrich Defendant Chi, individually.  In connection with this scheme, Defendants issued, or caused to be issued, a series of public statements that they knew, or were reckless in not knowing, were materially false and misleading, and failed to disclose material information necessary to render such statements not false and misleading.

2.     Perfect World is an online game developer and operator based in the People's Republic of China.  American Depositary Shares ("ADSs") of Perfect World have been traded on the NASDAQ exchange since July 26, 2007.  Defendant Michael Yufeng Chi ("Chi") is, and was at all relevant times, the founder, CEO, and Chairman of the Board of Directors of Perfect World.

3.     Perfect World and Chi have been engaged in a fraudulent scheme to mislead Perfect World's investors and the public and conceal related-party transactions since at least 2009.  Defendants' pattern of fraud and related wrongdoing includes, *inter alia,* the following:

- Chi has dominated and controlled Perfect World since its inception, and currently dominates and controls its Board of Directors, all of whom are friends and/or colleagues of Chi.

- In 2008, Chi conspired with his close colleagues to create a company called Beijing Zhizhu Network Technology Co., Ltd. ("Zhizhu") to be used as Chi's personal slush fund.

- Seed money and the capital increases for Zhizhu were funded by Chi personally.  Chi funneled these funds through one of his colleagues in an attempt to conceal his true ownership interest and control over Zhizhu.

- Chi installed his close colleagues as managers of Zhizhu, and subsequently made bonus payments, severance payments, and other payments to his puppet management team.

- In 2009, Perfect World entered into overvalued contracts with Zhizhu, to market and advertise Perfect World's products, which benefited Zhizhu at Perfect World's expense.

- At no time did Perfect World disclose to the SEC or to the investing public that its overvalued contracts with Zhizhu were related-party transactions as a result of Chi's ownership and control over Zhizhu.

- In April 2010, Perfect World acquired a 20% equity interest in Zhizhu at a highly inflated price, which was accomplished in large part by Defendants' manipulation of a third-party appraisal report to make it appear as though purchase was at fair value.

- At no time did Perfect World disclose to the SEC or to the investing public that its 20% acquisition of Zhizhu was a related-party transaction as a result of Chi's ownership and control over Zhizhu.

- Perfect World failed to disclose the material fact of its 20% investment for over a year—finally revealing this fact when it filed its Form 20-F for 2010 on May 9,.

- In 2011, Perfect World disposed of its highly successful film and entertainment production company, Perfect World (Beijing) Pictures Co., Ltd. ("PW Pictures"), to Beijing Ever Joy Pictures Co, Ltd. ("Ever Joy Pictures"), a company majority owned by Chi.

- Perfect World failed to disclose that its sale of PW Pictures to Chi's film business was not for fair market value, but represented a significant discount to Perfect World, and that Perfect World's Board of Directors, which purportedly approved the sale, is not independent from Chi.

- On January 9, 2012, Perfect World issued materially false and misleading statements concerning the Defendants' activities after articles appearing on the internet alerted the public to Defendants' misconduct, and of the pending investigations by Chinese and United States regulatory authorities. Just one day after the articles surfaced -- prior to any internal investigation -- Perfect World issued a press release and filed a Form 6-K with the SEC summarily denying the allegations, and characterizing them as "malicious" and "false," and as a pattern of attempted extortion.

    4.    The wrongdoing described above has been confirmed by various sources. The Economic Investigation Division of the Beijing Public Security Bureau (PSB) investigated Defendant Chi's involvement with Zhizhu in 2010 and 2011 and concluded that Chi secretly funneled millions of dollars to Zhizhu prior to causing PW Network to acquire a 20% interest in Zhizhu. Bank records collected in the investigation, as well as transcripts of those interviewed, confirm that Chi remitted large amounts of money to his friends for the establishment and operation of Zhizhu. The investigation further revealed that Defendant Chi and Perfect World caused PW Network to overpay Zhizhu for advertising and promotion fees.

5.      On January 9, 2012, public disclosure of the above facts caused Perfect World's stock to fall 27%.

6.      Perfect World, in response to the public disclosure, announced that it had convened a "special committee" of its Board of Directors -- the same Board of Directors that has been allowing Chi to siphon corporate funds since at least 2009 -- to investigate allegations that it engaged in related-party transactions without the proper disclosures.

7.      Plaintiff has been a shareholder of Perfect World since December 4, 2009.  During the course of the Defendants' wrongdoing, Plaintiff purchased and sold shares of Perfect World. As a direct result of the Defendants' material misrepresentations and omissions, Plaintiff has been defrauded and deprived of the true value of his investment.

## II.      JURISDICTION AND VENUE

8.      The claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, codified as 15 U.S.C. §§78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Perfect World ADS are traded on the Nasdaq Global Market (NASDAQ) which is located in the Southern District of New York.

10.      This Court has personal jurisdiction over Perfect World because it is registered with the SEC and its ADS are traded on the NASDAQ exchange.

11.      This Court has personal jurisdiction over Chi because he signed materially false statements that were filed with the SEC.

12.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails and interstate telephone communications.

## III.     PARTIES

13.     Plaintiff Li Hong is a Canadian citizen residing in Toronto, Canada.  Plaintiff purchased and sold shares of Perfect World during the course of the wrongdoing by the Defendants.

14.     Defendant Perfect World is a corporation organized and existing under the laws of the Cayman Islands with its principal place of business in Beijing, China.

15.     Defendant Chi is a citizen of the People's Republic of China ("PRC"), residing in Beijing, China.   Chi was at all relevant times the Chairman and CEO of Perfect World.

## IV.     ALLEGATIONS

### A.     Defendant Chi Controls PW Network and Zhizhu

16.     Perfect World, a Cayman Islands company, operates its main business activities in China, through Beijing Perfect World Software Co., Ltd. (PW Software), a wholly-owned foreign enterprise which, through the use of a variable interest entity (VIE) structure, controls Perfect World Network Technology Co., Ltd ("PW Network").

17.     Perfect World operates in a restricted industry that restricts or prevents foreign-invested entities from holding certain licenses required to operate online games and online services.  Because of this, Perfect World relies on its key operating companies – including PW Network – to hold and maintain the licenses necessary to operate Perfect World's online services in China.

18.     According to Perfect World's 2010 Form 20-F, PW Network is a Chinese company controlled by Beijing Shiji Xiangshu Technology Co, Ltd., a PRC company controlled by Defendant Chi.

19.     In 2008, Chi sought to form a new entity to divert monies from Perfect World, to use for his own benefit.  Chi engaged his close friends Tian Liang, Yunfan Zhang, and Xinyu Miao in the scheme.  They formed Zhizhu with Chi's money and on Chi's behalf, and held themselves out as the owners and managers of Zhizhu, despite Chi's actual ownership and control.

20.     At all relevant times, Zhizhu held itself out to be a Chinese company that handles the research, promotion and development of new technologies.  Zhizhu's promotion materials state that the company provides e-business consulting, and that its major service projects include domain name services, virtual host, enterprise post offices, site planning, web design, systems development, Web site promotion, and website maintenance.

21.     Bank records show that, in July 2008, Chi wired RMB 1.5 million to Zhang to be used for the start-up capital of Zhizhu.  The money was wired from Chi's personal account to Zhang's account and then to Zhizhu's account.  The transfer of money through Zhang's account was intended to conceal the fact that Chi was behind the funding of Zhizhu.

22.     In March of 2009, Tian Liang transferred his equity interest in Zhizhu to Wentao Bai.  Wentao Bai is a former classmate of Chi's, and is also one of his close friends.

23.     In August 2009, Chi again wired RMB 9 million from his account to Zhang's account to be used as a capital increase for Zhizhu.  Chi's infusion of RMB 9 million was then forwarded to Zhizhu's account.  The transfer of money through Zhang's account was intended to conceal the fact that Chi was behind the funding of Zhizhu.

24.     In December 2008 and April 2009, Chi wired RMB 1.5 million to Zhang's account to be used to operate Zhizhu.  The money was wired from Chi's personal account, to Zhang's account, and then to Zhizhu's account.  The transfer of money through Zhang's account was intended to conceal the fact that Chi was behind the funding of Zhizhu.

25.     Chi induced his friends to hold themselves out as the owners and managers of Zhizhu by making bonus payments, severance payments, and other payments to them.  Chi transferred these funds from his account directly into the individual management personnel accounts.  For example, Chi transferred RMB 650,000 into Zhang's account as a "bonus" payment for setting up Zhizhu on Chi's behalf.

### B.     Defendants Caused PW Network to Pay Inflated Prices for Zhizhu's Marketing Services

26.     In 2009, at the direction of Chi, Perfect World entered into various agreements with Zhizhu to promote, advertise, and market Perfect World's products.

27.     According to Zhang, Perfect World paid Zhizhu RMB 4 million over two years. This was appreciably above market and resulted in inordinate profits for Zhizhu.  According to Perfect World's Form 20-F for the year 2010, in addition to Perfect World's payments to Zhizhu for its services in 2010, it *pre-paid* Zhizhu for marketing services in the amount of ***RMB 2,127,500***.  No explanation for this exorbitant amount is provided.  The prices for advertising and promotional services are far in excess of typical arms-length prices for such services in the marketplace.

28.     In February 2010, in connection with his scheme to use Zhizhu to enrich himself at the expense of Perfect World's shareholders, Chi transferred money to Zhang so that Zhizhu could purchase an online gaming review website.  Zhang has admitted that the website (found at

http://nga.178.com) is registered in Zhang's name, but Defendant Chi is the actual owner of the website.

29.     Zhizhu operates this website as part of the advertising and marketing services it provides to Perfect World pursuant to contracts that highly favor Zhizhu.   This popular website could just have easily been purchased directly by Perfect World through one of its PRC operating companies such as PW Network.

30.     Chi's substantial ownership of Perfect World shares, combined with his indirect ownership and control of Zhizhu, make all of the transactions between Perfect World and Zhizhu related-party transactions.  Defendants hid the related-party nature of those transactions to the investing public, artificially inflating the stock price of Perfect World.  By doing so, Chi benefited both from his ownership in Perfect World  and from his secret ownership and control over Zhizhu.

**C.     Defendants Caused PW Network to Acquire
20% of Zhizhu at an Inflated Price**

31.     In furtherance of Defendants' scheme to allow Chi to use Zhizhu for his personal benefit, PW Network acquired a 20% minority equity interest in Zhizhu in April 2010.

32.      Defendant Chi's capital infusion of RMB 9 million in Zhizhu in August 2009, was paid right before PW Network's acquisition in order to make it appear as though Zhizhu was worth more than it actually was.

33.     In fact, PW Network's acquisition was done at an inflated price.  PW Network paid RMB 27 million for acquiring a 20% equity interest in Zhizhu; yet, at the time of this acquisition, the registered capital of Zhizhu was only RMB 10 million.

34.     In an effort to conceal the fact that PW Network significantly overpaid for its investment, Defendant Chi caused Perfect World to engage Marsh (Beijing) Risk Consulting Company Limited ("Marsh").

35.     Defendants misled to Marsh about the purpose for the appraisal.  According to a manager at Marsh, the Marsh appraisers did not believe their work was meant to be a valuation for an acquisition, but rather an accounting consulting appraisal.

36.     The fact that Defendants hired Marsh to manipulate the appraisal process is also supported by the fact that Marsh was engaged to appraise Zhizhu in July 2010, *after* the completion of the acquisition.  Moreover, the Marsh appraisal was based solely on a review of documents that were provided by Perfect World.   Finally, the post-transaction valuation issued by Marsh appears fabricated, as it valued Zhizhu at RMB 135 million, ***exactly*** 5 times Beijing Perfect World's 20% investment.

37.     Defendants misrepresented to the publicly that the Marsh appraisal confirmed the purchase price paid, and failed to disclose the inadequacies and deficiencies surrounding the appraisal.

38.     By hiding the true value of the investment to the public, Defendants artificially inflated the stock price of Perfect World.  Accordingly, Chi benefited both from his ownership in Perfect World and from his secret ownership and control over Zhizhu.

**D.     Defendants Caused Perfect World to Sell Its Profitable Film Company to a Company Owned by Chi and an Original Shareholder of Zhizhu**

39.     In 2011, Chi and Perfect World engaged in another fraud as part of its overall scheme to enrich Defendant Chi at the expense of Perfect World shareholders.  Chi arranged for Perfect World to sell its highly successful film and entertainment production company, PW Pictures, to Ever Joy Pictures, a company majority owned by Chi.

40.     Furthering his practice of forming entities for the sole purpose of siphoning off Perfect World's assets, and emboldened by his success with Zhizhu, Chi formed Ever Joy Pictures

with his close friend Tian Liang, one of the original puppet managers and owners of Zhizhu. Ever Joy Pictures was formed for the sole purpose of acquiring PW Pictures.

41.     As part of Defendants' fraudulent scheme, Perfect World sold PW Pictures to Every Joy Pictures for RMB 360 million, an amount considerably less than its true value.

42.     Perfect World's sale of PW Pictures cannot be reconciled with sound business judgment. In the year prior to Chi's scheme to transfer this asset to himself, Perfect World saw a dramatic increase in revenue generated from PW Pictures. Perfect World's 1Q 2011 unaudited financial results reveal that the revenue generated by PW Pictures increased nearly *400%* in 4Q 2010, and was up to RMB 11.1 million in 1Q 2011, just prior to the sale to Chi.

43.     The sale of PW Pictures was done at a significant loss to Perfect World. The amount Ever Joy Pictures paid for PW Pictures is less than the amount that Perfect World paid to acquire the various entities that combined to create the successful PW Pictures operation. The amount Ever Joy Pictures paid for PW Pictures is also nearly the same amount that PW Pictures collected in gross revenue from *one* major film released soon after Chi's acquisition. This movie, entitled "Lost Love In 33 Days," earned more than RMB 347 million in gross revenue, putting all profits directly into Chi's pocket.

44.     Events surrounding Ever Joy's acquisition of PW Pictures further confirm that Chi understood the true value of PW Pictures, and intended to acquire a valuable asset from Perfect World to the detriment of Perfect World's investors.

45.     At or around the same time Ever Joy Pictures purchased PW Pictures, Chi sold 20% of Ever Joy Pictures for approximately RMB 492 million. By pricing 20% of Ever Joy Pictures at RMB 492 million, at the same time Ever Joy Pictures purchased PW Pictures -- its only asset -- for

approximately RMB 360 million, Chi revealed his belief that the true value of PW Pictures was actually RMB 2.46 billion.

46.     By hiding the true value of PW Pictures to the public, Defendants artificially inflated the stock price of Perfect World.  Accordingly, Chi benefited both from his ownership in Perfect World and from his ownership of Ever Joy Pictures.

**E.     The Truth Is Disclosed and Perfect World's Shares Plummet 27%**

47.     On or about January 8, 2012, an article was posted on the internet exposing the fraud of Perfect World and Defendant Chi.  The article was reposted on several Chinese language forums including http://sc.stock.cnfol.com/120111/123,3215,11546297,00.shtml,

http://www.tianya.cn/publicforum/content/play/1/213621.shtml,

http://bbs.i918.cn/thread-1695639-1-1.html,

http://www.prdcity.com/forum.php?mod=viewtherad&tid=7872,

http://bbs.lnd.com.cn/thread-1726845-1-1.html, and

http://guba.hexun.com/d/16626296,guba.html.

48.     The article stated that both the Chinese and United States government authorities were investigating Perfect World and Defendant Chi.

49.     The article also disclosed that Defendant Chi actually controlled Zhizhu through his personal investments of RMB 20 million in Zhizhu in the name of others.

50.     The article stated that Defendant Chi abused his power to have PW Network acquire a 20% share in Zhizhu at an inflated price, and that Defendant Chi signed and approved the transaction without Board approval.

51.     The article further stated that Defendant Chi caused Perfect World to pay over fair market rates for the online advertising and marketing services provided by Zhizhu, and that Defendant Chi invested RMB 2.96 million to acquire a website for Zhizhu.

52.     The article further disclosed that Defendant Chi wrongfully made use of Perfect World to undertake the risks of establishing a film company for his own profit.  In August 2011, Chi caused Perfect World to sell PW Pictures to Chi's company Ever Joy for RMB 360 million.

53.     On January 9, 2012, the first trading day after these disclosures, the share of Perfect World's ADSs dropped from 12.00 to 8.81 or 27%.

## V.     FALSE AND MISLEADING STATEMENTS ISSUED BY PERFECT WORLD

### A.     Perfect World Issued Materially False Statements In Connection with Transactions With Zhizhu

54.     On June 14, 2010, Perfect World filed Form 20-F for the fiscal year ended December 31, 2009.  Perfect World failed to disclose the material fact that Chi paid his colleagues to form Zhizhu on his behalf, and then caused Perfect World to into related-party transactions with Zhizhu.

55.     Perfect World also failed to disclose the material fact that it entered into lucrative advertising and marketing contracts with Zhizhu, with terms highly favoring Zhizhu.

56.     On May 9, 2011, over a year after Perfect World's acquisition of 20% of Zhizhu, Perfect World filed Form 20-F for the fiscal year ended December 31, 2010.  Perfect World failed to disclose the material fact that Chi paid his colleagues to form Zhizhu on his behalf, and then caused Perfect World to enter into related-party transactions with Zhizhu.

57.     Perfect World further failed to disclose the material fact that its contracts with Zhizhu were worth RMB 4 million over two years.  Instead, Form 20-F for 2010 stated that Zhizhu provided marketing services to Perfect World in the amount of RMB 170,000 in 2010, and that Perfect World prepaid Zhizhu for marketing services in the amount of *RMB 2,127,500*.  Perfect World further failed to disclose the material fact that the terms of its contracts with Zhizhu -- particularly the pre-payments -- highly favor Zhizhu.

**B.    Perfect World Issued Materially False Statements
In Connection with 20% Acquisition of Zhizhu**

58.    On August 16, 2010, Perfect World issued a press release announcing its 2Q 2010 unaudited financial results.

59.    Perfect World's August 16, 2010 press release failed to disclose the material fact that PW Network had invested a 20% equity interest in Zhizhu in April 2010, and failed to disclose the material fact that the acquisition was a related-party transaction because, *inter alia,* Chi previously paid his colleagues to form Zhizhu on his behalf.

60.    On August 17, 2010, Perfect World filed Form 6-K with the SEC announcing its 2Q 2010 unaudited financial results.

61.    Perfect World's 2Q 2010 Form 6-K failed to disclose the material fact that PW Network had invested a 20% equity interest in Zhizhu in April 2010, and failed to disclose the material fact that the acquisition was a related-party transaction because, *inter alia,* Chi previously paid his colleagues to form Zhizhu on his behalf.

62.    On November 15, 2010, Perfect World issued a press release announcing its 3Q 2010 unaudited financial results.

63.    Perfect World's November 15, 2010 press release failed to disclose the material fact that PW Network had invested a 20% equity interest in Zhizhu in April 2010, and failed to disclose the material fact that the acquisition was a related-party transaction because, *inter alia,* Chi previously paid his colleagues to form Zhizhu on his behalf.

64.    On November 16, 2010, Perfect World filed Form 6-K with the SEC announcing its 3Q 2010 unaudited financial results.

65.    Perfect World's 3Q 2010 Form 6-K failed to disclose the material fact that PW Network had invested a 20% equity interest in Zhizhu in April 2010, and failed to disclose the

material fact that the acquisition was a related-party transaction because, *inter alia,* Chi previously paid his colleagues to form Zhizhu on his behalf.

66.     On May 9, 2011, Perfect World filed Form 20-F with the SEC for the fiscal year ended December 31, 2010.

67.     In Item 4 of Form 20-F describing the History and Development of the Company, Perfect World announced for the first time that, in April 2010, PW Network invested a 20% equity interest in Zhizhu.  Perfect World described the transaction as a "strategic investment" that was "expected to allow Perfect World to leverage Zhizhu's large user base to further grow our online gaming community."

68.     Perfect World's 2010 20-F failed to disclose the material fact that the acquisition Zhizhu was a related-party transaction because, *inter alia,* Chi previously paid his colleagues to form Zhizhu on his behalf.

C.     **Perfect World Issued Materially False Statements**
**In Connection with PW Pictures**

69.     On August 3, 2011, Perfect World issued a press release announcing that it had entered into an agreement to sell PW Pictures, the entity that operated Perfect World's film business, to Ever Joy Pictures, which is majority-owned by Chi.  The press release further stated that the price for the film business was RMB 360 million, and noted that the transaction was approved by the Board of Directors and a special committee consisting of all independent directors of the Board.  The press release further stated that the transaction "is expected to sharpen the Company's focus on its core online game development and operation business and maximize shareholder value over time."

70.     The press release, dated August 3, 2011, failed to state the material fact that both Chi and Perfect World knew that PW Pictures was worth substantially more than RMB 360 million.

71.     The press release, dated August 3, 2011, further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

72.     The press release, dated August 3, 2011, further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

73.     The press release, dated August 3, 2011, further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

74.     On August 3, 2011, Perfect World issued a Form 6-K with the SEC announcing that it had entered into an agreement to sell PW Pictures to Ever Joy Pictures.  The press release further stated that the price for the film business was RMB 360 million, and noted that the transaction was approved by the Board of Directors and a special committee consisting of all independent directors of the Board.  The press release further stated that the transaction "is expected to sharpen the Company's focus on its core online game development and operation business and maximize shareholder value over time."

75.     The Form 6-K, dated August 3, 2011, failed to state the material fact that both Chi and Perfect World knew that PW Pictures was worth substantially more than RMB 360 million.

76.     The Form 6-K, dated August 3, 2011, further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

77.     The Form 6-K, dated August 3, 2011, further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

78.     The Form 6-K, dated August 3, 2011, further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

79.     On August 22, 2011, Perfect World issued a press release announcing its second quarter 2011 unaudited financial results.  As part of its Second Quarter 2011 Financial Results, Perfect World announced that it had discontinued its film operations.  Perfect World announced that, upon authorization and approval by the Board of Directors and a special committee consisting of all independent directors of the Board, Perfect World recently entered into a definitive agreement to sell Perfect World Pictures to Ever Joy Pictures, which is majority-owned by Chi, for RMB 360 million.  The press release further stated that the transaction "is expected to sharpen the Company's focus on its core online game development and operation business and maximize shareholder value over time."

80.     The press release, dated August 22, 2011, failed to state the material fact that both Chi and Perfect World knew that PW Perfect World Pictures was worth substantially more than RMB 360 million.

81.     The press release, dated August 22, 2011, further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

82.     The press release, dated August 22, 2011, further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

83.    The press release, dated August 22, 2011, further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

84.    On August 22, 2011, Perfect World conducted its 2Q 2011 earnings call which was attended by financial analysts, recorded, and then available on Perfect World's website and other online platforms.  Executives from Perfect World, including Chi, Vivien Wang (VP, IR and Corporate Communications), and Kelvin Lau (CFO) read prepared remarks.  As part of his prepared remarks, Lau stated that that there was a recent agreement to sell PW Pictures to Ever Joy Pictures, which is majority owned by Chi, for a total consideration of RMB 360 million.  Lau further stated that the decision to sell the film business was made and fully authorized by Perfect World's Board and a special committee consisting of all independent directors of the Board.

85.    During the Question and Answer portion of the earnings call, an analyst from Morgan Stanley asked for more details about Perfect World's sale of its film business, specifically why they were selling at this point in time and what would be the financial impact to Perfect World.  Lau responded:

> We sold our film business several weeks ago.  I think the major reason for selling our film business as we mentioned in our announcement is, I think the major reason is we want to more focus and sharpen our focus on our core business, which is online gaming business, so we decided to sell our firm business.  We sold the film business at a premium, so the – at a premium price, but I think there would be – there will be no impact on the P&L in Q3.  Why?  Because this is a related party transaction, so all the premium we get from this transaction will be booked in our additional capital in the equity account, so there is no impact on our P&L in Q3.

86.    On the August 22, 2011 2Q 2011 earnings call, Perfect World executives failed to state the material fact that both Chi and Perfect World knew that PW Pictures was worth substantially more than RMB 360 million.  In fact, Perfect World, through its CFO Lau, materially misrepresented that Perfect World sold the film business at a premium.

87.     On the August 22, 2011 2Q 2011 earnings call, Perfect World executives further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

88.     On the August 22, 2011 2Q 2011 earnings call, Perfect World executives further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

89.     On the August 22, 2011 2Q 2011 earnings call, Perfect World executives further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

90.     On August 23, 2011, Perfect World filed a Form 6-K with the SEC announcing its second quarter 2011 unaudited financial results.  As part of its Second Quarter 2011 Financial Results, Perfect World announced that it had discontinued its film operations.  Perfect World announced that, upon authorization and approval by the Board of Directors and a special committee consisting of all independent directors of the Board, Perfect World recently entered into a definitive agreement to sell Perfect World Pictures to Ever Joy Pictures, which is majority owned by Chi, for RMB 360 million.  The Form 6-K further stated that the transaction "is expected to sharpen the Company's focus on its core online game development and operation business and maximize shareholder value over time."

91.     The Form 6-K, dated August 23, 2011, failed to state the material fact that both Chi and Perfect World knew that PW Pictures was worth substantially more than RMB 360 million.

92.     The Form 6-K, dated August 23, 2011, further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

93.     The Form 6-K, dated August 23, 2011, further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

94.     The Form 6-K, dated August 23, 2011, further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

95.     On November 21, 2011, Perfect World issued a press release announcing its third quarter 2011 unaudited financial results.  As part of its Third Quarter 2011 Financial Results, Perfect World stated that it had completed its divestiture of its film business.  Perfect World stated that on August 3, 2011 it announced that it had entered into a definitive agreement to sell Perfect World Pictures to Ever Joy Pictures, which is majority owned by Chi, for a total consideration of RMB 360 million.  The press release further stated that the transaction "is expected to sharpen the Company's focus on its core online game development and operation business and maximize shareholder value over time."

96.     The press release, dated November 21, 2011, failed to state the material fact that both Chi and Perfect World knew that PW Pictures was worth substantially more than RMB 360 million.

97.     The press release, dated November 21, 2011, further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

98.     The press release, dated November 21, 2011, further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

99.     The press release, dated November 21, 2011, further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

100.    On November 21, 2011, Perfect World conducted its 3Q 2011 earnings call which was attended by financial analysts, recorded, and then available on Perfect World's website and other online platforms.  Executives from Perfect World, including Chi, Joanne Deng (IR Manager), Vivien Wang (VP of IR), and Kelvin Lau (CFO) read prepared remarks.  As part of his prepared remarks, Lau stated that, as of September 30, 2011, Perfect World had completed the sale of its film business.

101.    On the November 21, 2011 2Q 2011 earnings call, Perfect World executives failed to state the material fact that both Chi and Perfect World knew that PW Pictures was worth substantially more than RMB 360 million.

102.    On the November 21, 2011 2Q 2011 earnings call, Perfect World executives further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

103.    On the November 21, 2011 2Q 2011 earnings call, Perfect World executives further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

104.    On the November 21, 2011 2Q 2011 earnings call, Perfect World executives further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

105.    On November 22, 2011, Perfect World filed a Form 6-K with the SEC announcing its third quarter 2011 unaudited financial results.  As part of its Third Quarter 2011 Financial Results, Perfect World stated that it had completed its divestiture of its film business.  Perfect World stated that on August 3, 2011 it announced that it had entered into a definitive agreement to sell Perfect World Pictures to Ever Joy Pictures, which is majority owned by Chi, for a total consideration of RMB 360 million.  The Form 6-K further stated that the transaction "is expected to sharpen the Company's focus on its core online game development and operation business and maximize shareholder value over time."

106.    The Form 6-K, dated November 22, 2011, failed to state the material fact that both Chi and Perfect World knew that PW Pictures was worth substantially more than RMB 360 million.

107.    The Form 6-K, dated November 22, 2011, further failed to state the material fact that Perfect World's Board of Directors is not independent from Chi.

108.    The Form 6-K, dated November 22, 2011, further failed to state the material fact that the amount Chi paid to acquire PW Pictures was worth less than Perfect World paid to acquire the various entities that combined to create PW Pictures.

109.    The Form 6-K, dated November 22, 2011, further failed to state the material fact that PW Pictures saw a dramatic increase in revenue in the year prior to its sale to Chi, and that PW Pictures was anticipating the release of the major motion picture, "Lost Love In 33 Days."

### D.      Perfect World Issued Materially False Statements After the Corrective Disclosure

110.    On January 10, 2012, Perfect World issued a press release responding to the articles appearing on the internet on January 9, 2012 that alerted the public of Defendants' misconduct and the pending investigations by Chinese and U.S. regulatory authorities.

111.    On January 11, 2012, Perfect World filed the substance of its press release with the SEC as a Form 6-K.

112.    Perfect World's press release and Form 6-K acknowledged that Defendants had been subject to inquiries by the local public security and tax bureaus in recent months.  Perfect World did not deny that the SEC was investigating the allegations of wrongdoing.  Nevertheless, Perfect World's press release and Form 6-K contained a number of materially false and misleading statements.

113.    In its press release and Form 6-K, Perfect World falsely claimed that it has been disclosing material information in a timely and materially accurate manner in accordance with applicable U.S. securities regulations and stock exchange rules since its initial public offering in July 2007.

114.    Perfect World's press release and Form 6-K further falsely claimed that Perfect World has conducted its business operations and investment activities in compliance with applicable laws and company policies.

115.    Perfect World's press release and Form 6-K further falsely claimed that the transactions between Perfect World and Zhizhu have been conducted at fair market prices, following the Company's standard approval procedures.  Perfect World's press release and Form 6-K noted that Zhizhu provided marketing services amounting to RMB 170,000 in 2010, but the press release and Form 6-K misleadingly omitted the fact that Perfect World funneled RMB 2,127,500 to Zhizhu as alleged "prepayments" in 2010.

116.    Perfect World's press release and Form 6-K further falsely claimed that a Special Committee of Perfect World's Board of Directors approved the sale of PW Pictures to Chi's

company based, in part, on a valuation report and a fairness opinion letter provided by a reputable international third-party appraisal firm.

117.    Perfect World's press release and Form 6-K further falsely claimed that Perfect World's investment in Zhizhu was a regular investment activity that had been appraised by an independent third-party appraisal firm.

118.    Perfect World's press release and Form 6-K further falsely claimed that none of Perfect World's directors, senior executives or major stockholders holds any equity interest in Zhizhu.

119.    As a result of Perfect World's materially false statements, the price of Perfect World's ADSs increased from $8.81/share to the artificially-inflated price of $10.53/share.

## VI.    STANDING ALLEGATIONS

120.    Plaintiff engaged in the purchase and sale of securities during the issuance of Defendants' materially false statements.

121.    As specified above, Defendants' materially false statements began in 2009 when Perfect World entered into marketing contracts with Zhizhu and failed to disclose them as related-party transactions due to Defendant Chi's control over Zhizhu.

122.    Plaintiff purchased shares of Perfect World ADSs in the secondary market on December 4, 2009.

123.    Over the next two weeks of December 2009, and again in January 2010, Plaintiff purchased additional shares of Perfect World ADSs.

124.    In April and October 2010, Plaintiff sold a portion of his shares.

125.    At the time of the public statements disclosing Defendant's fraud, Plaintiff held shares of Perfect World ADSs.  He continues to hold shares today.

## VII.   CAUSATION

126.   As described above, Defendants' material misrepresentations and omissions had the effect of creating and maintaining an artificially-inflated price for Perfect World ADSs. Those representations and omissions served to maintain the ADS price at artificially-inflated levels by maintaining and supporting the false public perception of Perfect World's business and operations, particularly of the role of its CEO and Chairman, Defendant Chi.

127.   Defendants had a duty to promptly disseminate accurate and truthful information with respect to the related-party transactions that were not at arms-length, or to cause and direct that such information be disseminated, and to correct promptly any previously disseminated information that was misleading to the market.

128.   As a result of Defendants' failure to do so, the price of Perfect World's ADSs was artificially-inflated during the times that Plaintiff bought and sold the security, damaging Plaintiff as the truth was revealed to the public and the price of Perfect World stock declined.

## VIII.   APPLICABILITY OF PRESUMPTION OF RELIANCE

129.   At all relevant times, the market for Perfect World ADSs was an efficient market for the following reasons, among others:

a.   Perfect World ADSs met the requirements for listing, and was listed and actively traded, on NASDAQ, a highly efficient market;

b.   as a regulated issuer, Perfect World filed periodic reports with the SEC;

c.   Perfect World stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Reports were publicly available and entered the public marketplace.

  d. Perfect World regularly issued press releases which were carried by national

    newswires.  Each release was publicly available and entered the public

    marketplace.

  130. As a result, the market for Perfect World securities promptly digested current

information about Perfect World from all publicly-available sources and this information was

reflected in Perfect World's stock price.  Under these circumstances, all purchasers of Perfect

World stock, including the Plaintiff, suffered damages through their purchase of stock at

artificially inflated prices and a presumption of reliance applies.

## IX. INAPPLICABILITY OF THE SAFE HARBOR

  131. The statutory safe harbor applicable to forward-looking statements under certain

circumstances does not apply to any of the false or misleading statements pled in this Complaint.

First, the safe harbor provided by the Private Securities Litigation Reform Act of 1995 (the

"PSLRA") does not apply to false or misleading statements that are contained in financial

statements which purport to have been prepared in accordance with GAAP.  Second, the

statements complained of were not forward-looking statements nor were they identified as

forward-looking statements when made.  Rather, the false or misleading statements complained of

in this Complaint concerned historical and/or current facts and conditions existing at the time the

statements were made.

  132. To the extent that any of the false or misleading statements alleged herein can be

construed as forward-looking statements, they were not accompanied by any meaningful

cautionary language identifying important facts that could cause actual results to differ materially

from those in the purportedly forward-looking statements.  Alternatively, to the extent the

statutory safe harbor would otherwise apply to any forward-looking statements pled in this

Complaint, Defendant Chi is liable for those false or misleading forward-looking statements

because at the time each of those statements was made, the speaker(s) knew the statement was false or misleading, or the statement was authorized and/or approved by Defendant Chi who knew that the statement was materially false or misleading when made.

## X.   FIRST CAUSE OF ACTION

### (For violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Both Defendants)

133.   Plaintiff repeats and realleges each and every allegation contained above.

134.   Defendants: (a) knew or recklessly disregarded material adverse non-public information about Perfect World's then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about Perfect World.

135.   Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

136.   Defendant Chi participated in the drafting, preparation and/or approval of the various public statements and SEC filings that are complained of herein and was aware of, or recklessly disregarded, the material misstatements and omissions contained therein.

137.   Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Perfect World stock.

138.    The Plaintiff has suffered damage in that, in reliance on the integrity of the market, he paid artificially-inflated prices for Perfect World stock. The Plaintiff would not have purchased Perfect World stock at the prices he paid, or at all, if he had been aware that the market prices had been artificially and falsely inflated by Defendants' false and misleading statements.

## XI.   SECOND CAUSE OF ACTION

### (Violation of Section 20(a) of The Exchange Act Against Defendant Chi)

139.    Plaintiff repeats and realleges each and every allegation contained above.

140.    Chi acted as a controlling person of Perfect World within the meaning of Section 20(a) of the Exchange Act.

141.    Defendant Chi, because of his position of control and authority as the CEO of Perfect World, and Chairman of the Board of Directors of Perfect World, was able to and did control the content of the various SEC filings, press releases, and other public statements that are complained of in this Complaint. Defendant Chi was provided with copies of the documents containing material misstatements and omissions prior to or shortly after their issuance and had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, Defendant Chi is responsible for the accuracy of the SEC filings, press releases, and other public statements detailed in this Complaint, and is therefore primarily liable for such representations.

142.    By reason of such wrongful conduct, Chi is liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of his wrongful conduct, the Plaintiff suffered damages in that, in reliance on the integrity of the market, he paid artificially-inflated prices for Perfect World stock. The Plaintiff would not have purchased Perfect World stock at the prices he paid, or at all, if he had been aware that the market prices had been artificially and falsely inflated by Defendants' false and misleading statements.

## XII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff prays for relief and judgment, as follows:

A.  Awarding rescission or a recissory measure of damages in favor of the Plaintiff;

B.  Awarding compensatory damages in favor of the Plaintiff against both Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trail, including interest thereon;

C.  Awarding Plaintiff his reasonable costs and expenses incurred in this action including counsel fees and expert fees;

D.  Enjoining Defendants to refrain from further misconduct that violates the federal securities laws, as alleged herein; and

E.  Such other and further relief as the Court may deem just and proper.

## XIII.   <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues.


DATED:  May 10, 2012                    RESPECTFULLY SUBMITTED,

                                        REED SMITH LLP

                                        By: _____

                                        Steven Cooper (SC4934)
                                        Jennifer L. Achilles (JA5148)
                                        599 Lexington Avenue
                                        New York, New York 10022
                                        Tel: 212-521-5400
                                        Fax: 212-521-5450
                                        e-mail: scooper@reedsmith.com
                                               jachilles@reedsmith.com


                                        Attorneys for Plaintiff